Duane R. JOSEPH, petitioner, Appellant,

v.

Grant HAGGEN, Respondent.

Nos. 47002, 47020.

Supreme Court of Minnesota.

June 3, 1977.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and John M. Mason, Minneapolis, for appellant.

Coulter, Nelson & Sullivan and Lyle R. Frevert, Minneapolis, for respondent.

Heard before PETERSON, MacLAUGHLIN, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

We granted plaintiff's unopposed petition for discretionary review of the trial court's order granting defendant's motion for a new trial on all issues in an action for personal injuries arising out of a collision between an automobile operated by defendant and a bicycle operated by plaintiff.

The order, as the parties agree, is based primarily upon the trial court's conclusion, in accordance with Rule 59.01(7), Rules of Civil Procedure, that the damages awarded were excessive and not justified by the evidence, although the court also ordered a new trial on the issue of liability.[1]

We decided *Koenig v. Ludowese*, Minn., 243 N.W.2d 29 (1976), 1 week prior to the issuance of the trial court's order in this case. In that case we made a restatement of the standard to be applied in reviewing an order granting a new trial. We reaffirmed the general rule stated in *Rheiner v. Stillwater St. Ry. & T. Co.*, 29 Minn. 147, 150, 12 N.W. 449, 451 (1882), that "a verdict will not be set aside unless clearly and palpably against the evidence" and that the trial court's discretion was subject to the injunction that it "ought to exercise not merely a cautious, but a strict and sure, judgment" before setting aside a verdict.

1. A prior order, without a memorandum, expressed a conclusion that, although the jury correctly found both parties causally negligent, the apportionment of negligence was not supported by the evidence. The second order, with a memorandum, acknowledged that the trial court's "disagreement [with the apportionment of negligence], however real, does not provide justification for ordering a new trial" and instead stated that it ordered a new trial on all issues "not only because of the Court's conclusion with respect to the damage assessment but because of some doubt concerning the apportionment of negligence made by the jury."

We did not wholly disavow the "broad discretionary authority" of the trial court stated in more recent cases such as *Ginsberg v. Williams*, 270 Minn. 474, 135 N.W.2d 213 (1965), but did undertake to correct "the impression that the trial court is free to set aside a jury verdict whenever it is displeased or dissatisfied with the result of the jury's deliberations." Minn., 243 N.W.2d 30. In *Koenig v. Ludowese* we stated in summary:

"\* \* \* [T]rial judges should exercise the authority granted in Rule 59.-01(7) with reluctance and caution, *particularly in cases where there are no expressed and articulable reasons*, based upon demonstrable circumstances or events, which support a conclusion that injustice has been done." (Italics supplied.) Minn., 243 N.W.2d 30.

It is clear to us that the order granting a new trial as to the issue of liability falls short of the *Koenig* standard. Defendant on oral argument conceded that he "cannot quarrel at that point with the findings of the jury." The order is accordingly reversed as to that part of it which grants a new trial as to liability.

The granting of a new trial with respect to damages clearly stands on a different footing. Time and again we have rejected contentions that a new trial should have been granted as to an issue of excessive damages with the note that the jury's verdict had been passed upon and approved by the trial court. We should no less accord credit to the trial court's "expressed and articulable reasons" (Minn., 243 N.W.2d 30) for disapproval of the jury's verdict.

The trial court disapproved the jury's assessment of damages in the amount of $55,-000 for the reasons stated in its memorandum:

"The plaintiff, while operating a bicycle, was involved in a collision with an automobile driven by the defendant on September 8, 1973. He was first seen by Dr. Robert A. Wengler in the Emergency Room of Mount Sinai Hospital on that date and was diagnosed as having an obvious right acromioclavicular separation. Surgery was scheduled for September 10 but was not performed because of the plaintiff's markedly increased temperature. Dr. Wengler testified that he found on X-ray examination no evidence of any fracture and described the plaintiff as having a second degree separation functionally. A third degree separation is more severe and a first degree separation, less severe. Dr. Wengler further testified that the plaintiff's condition is permanent and that he anticipates the plaintiff will develop a progressive degenerative arthritic condition in his shoulder which is secondary to the injury sustained.

"The plaintiff himself testified that he occasionally experiences some pain and some limitation of motion in his shoulder but that he has good strength. In the summer of 1974 he was employed on a service rig in an oil field. In the fall of that year he returned to the university. In the summer of 1975 he again found employment on a drilling rig doing the same type of work as he did the previous summer but with heavier equipment. He was able to work seven days a week and sometimes worked double shifts. He testified that he was active athletically, that skiing gives him no difficulty, but that back-packing and mountaineering has caused some discomfort. He further testified that he has lost sufficient strength to continue his rock climbing activities and that jogging over a five-mile course results in a bothersome ache in the shoulder.

"The jury assessed the plaintiff's damages in the sum of $55,000.00. Although there can be no dispute that the plaintiff did sustain compensatory injuries by reason of the accident and, further, that the injury is permanent in nature, the amount of damages assessed under the circumstances of the plaintiff's recovery and present physical ability are excessive, notwithstanding the prognosis for future arthritic complications. That conclusion is forced upon the undersigned by the plaintiff's own testimony concerning his

employment history following the collision and his description of his physical activities at the present time. While no one should be penalized for candor, it seems equally true that the propriety of the jury's damage assessment must be tested in light of the facts shown by the evidence. So tested, the undersigned is compelled to conclude when compared with other verdicts for comparable injuries awarded by juries in this judicial district is excessive."

Our reading of the transcript of the trial confirms that the trial court has fairly stated the substance of the testimony of the plaintiff and of his treating physician. We conclude that the order, in so far as it granted a new trial with respect to damages, was not an abuse of its judicial discretion and to that extent should be affirmed.

Costs and disbursements are allowed to neither party.

Reversed in part; affirmed in part.