**RED RIVER SPRAY SERVICE,
INC., Appellant,**

v.

**Gene NELSON, et al., Respondents.**

No. C6–86–1831.

Court of Appeals of Minnesota.

April 21, 1987.

John E. Mack, New London, for appellant.

Dan Plambeck, Stefanson, Landberg, Plambeck & Geeslin, Moorhead, for respondents.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

Red River Spray Service, Inc. appeals from an order denying its motion for new trial. Red River claims the evidence was insufficient to support the trial court's findings and the trial court erred by admitting irrelevant evidence. We affirm.

## FACTS

On June 7, 1984 Ray Zajac hired appellant Red River Spray Service, Inc. to spray herbicides by airplane over his cornfield. Errol Ernst, Red River's president, flew an airplane at an altitude of 200 to 300 feet over Zajac's property. Ernst testified he sprayed a combination of Atrazine and crop oil, but other testimony indicated he used both Atrazine and Banvel, a federally controlled, potentially harmful herbicide.

Four or five days after the spraying respondents Gene and Mark Nelson noticed damage to their soybean fields adjacent to Zajac's property. Soybean plants within 60 feet of Zajac's property were completely destroyed, while the damage became less prevalent at further distances. The Nelsons' evidence established a reduced yield from a probable 25 bushels per acre to 11 actual bushels per acre.

In November 1984 Red River commenced an action in conciliation court against Gene and Mark Nelson to recover fees for other unrelated sprayings. The parties eventually stipulated that the Nelsons owed Red River $1,616 for the unpaid bill. The Nelsons moved to remove the case to county court in order to assert a counterclaim seeking damages for harm done to their soybean crop.

The Nelsons testified that Ernst had admitted spraying Atrazine and Banvel on the Zajac property, Ernst's spraying records indicated such a spraying, and the soybean crop exhibited Banvel and Atrazine damage. Environmental Protection Agency (EPA) regulations printed on the Banvel package expressly prohibit aerial application whenever sensitive crops such as soybeans are growing in the vicinity of the area to be treated. Ernst recalled having stated that he used both Atrazine and Banvel, but claimed these earlier admissions were erroneous. Instead, Ernst claimed he used Atrazine and crop oil, and that the relevant crop spraying records were lost in a fire.

According to EPA regulations, Banvel may not be applied if the wind is in excess of five miles per hour and moving in the direction of nearby sensitive crops. The Nelsons presented evidence that the wind speed on the day of the spraying was seven to nine miles per hour moving in the direction of their soybean crop. Red River claims such evidence was irrelevant as being a record for an area forty miles away from the soybean crop. Ernst testified the wind speed that day in the sprayed area was zero to three miles per hour.

The trial court found Ernst had in fact used both Atrazine and Banvel and that these herbicides had caused considerable damage to the Nelsons' soybean crop. The court awarded the Nelsons $6,178 for damages. This amount was offset by the $1,616 due Red River on its claim. Red River moved the trial court for a new trial. The trial court denied the motion and this appeal followed.

## ISSUE

Did the trial court err in denying Red River's motion for new trial?

## ANALYSIS

Red River presents several arguments for reversal of the trial court's deni-

al of its motion for new trial. It claims the evidence was insufficient to support many of the trial court's findings and the trial court erred by admitting irrelevant evidence. An appellate court is subject to a stringent standard of review when examining a trial court's denial of a new trial motion. On review, this court merely considers whether the trial court exercised reasonable discretion in denying the motion for a new trial. *Koenig v. Ludowese,* 308 Minn. 380, 383, 243 N.W.2d 29, 30 (1976).

Red River claims the trial court erred by finding Banvel was used on the Zajac farm, herbicides damaged the Nelson's soybeans, and Red River was negligent. Generally, a new trial is not granted upon conflicting evidence unless the findings are so manifestly contrary to the evidence or not reasonably supported by the evidence as a whole. *Gand v. Jay Bros., Inc.,* 367 N.W.2d 645, 647 (Minn.Ct.App. 1985). In determining whether a finding is clearly erroneous, the evidence as a whole must be viewed in the light most favorable to the trial court's findings. *Schalow v. Mason,* 370 N.W.2d 475, 476 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Sept. 13, 1985).

There is ample evidence in the record to support each of the trial court's findings. An expert testified that the soybean field was damaged by Banvel and Atrazine. The Nelsons, Ernst, and the expert witness all testified that Ernst admitted to using Banvel on the property. According to Gene and Mark Nelson, Ernst's own records indicated the use of Banvel. The only contrary evidence was Ernst's subsequent denial of the use of Banvel.

Red River also claims that merely circumstantial evidence supported the finding that the herbicides it used actually caused the Nelsons' crop damage. Red River cites numerous other possible causes for the crop damage, including the mistaken application of harmful chemicals by the Nelsons themselves, chemical carry-over from previous years and poor weather conditions. However, no evidence supports these possibilities.

The trial court found Red River negligent for the aerial spraying of Banvel near the Nelsons' property. Again, there is sufficient evidence to support this conclusion. The manner in which Red River applied Banvel was specifically forbidden by the EPA. The Nelsons established that the herbicides caused extensive damage to their crops. The evidence before the trial court reasonably supports its findings.

Red River also argues the trial court erred by receiving irrelevant evidence to establish the extent of damages. The Nelsons testified that a similar soybean field of theirs that was not sprayed with harmful herbicides yielded 25 bushels per acre compared with 11 bushels per acre for the damaged crop. Red River claims this comparison is unfair because the fields are not sufficiently similar. However, the evidence presented at trial indicates otherwise. Both fields had approximately the same weather conditions, care, soil conditions and plantings. It was reasonable for the court to admit this evidence and to use it for a comparison to determine the amount of damages.

### DECISION

The trial court did not err by denying Red River's motion for new trial. The evidence is sufficient to support the trial court's findings.

Affirmed.